UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAROYA MARROW, individually and
on behalf of all others similarly situated,

      Plaintiff,

v.                                                              Case No. 8:23-cv-02959-KKM-LSG

E.R. CARPENTER COMPANY, INC.,
d/b/a CARPENTER CO.,

      Defendant.

_____

## <u>ORDER</u>

E.R. Carpenter Company (Carpenter) moves to dismiss Saroya Marrow's amended complaint. Mot. to Dismiss (MTD) (Doc. 15). Marrow alleges, on behalf of a putative class, that Carpenter failed to provide a sufficient notice of continuing healthcare coverage, in violation of the Employee Retirement Income Security Act (ERISA), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA). Am. Compl. (Doc. 14). Carpenter argues that Marrow lacks standing and fails to state a claim upon which relief may be granted. *See* MTD. For the below reasons, I deny Carpenter's motion.

## I.    BACKGROUND

Carpenter sponsors and administrates a health plan for its more than twenty employees. Am. Compl. ¶ 7. In the case of a qualifying event, a plan sponsor like Carpenter is required to provide former employees with the choice "to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161(a). Termination for any reason other than gross misconduct constitutes a qualifying event. *Id.* § 1163(2).

Under COBRA, in the case of termination, the plan administrator is required to provide the former employee with notice of her eligibility to continue her healthcare coverage. *Id.* § 1166(4)(a). This "requirement exists because employees are not expected to know instinctively of their right to continue their healthcare coverage." *Cummings v. Washington Mut.*, 650 F.3d 1386, 1391 (11th Cir. 2011). The notice must be issued in "accordance with regulations prescribed by the Secretary of [Labor]." 29 U.S.C. § 1166(a). The Secretary has promulgated a regulatory provision detailing the information that this notice must provide and has issued a Model Notice. *See* 29 C.F.R. § 2590.606-4. Although not mandatory, "[u]se of the model notice, appropriately modified and supplemented, will be deemed to satisfy the notice content requirements of [29 C.F.R. § 2590.606-4(b)(4)]." 29 C.F.R. § 2590.606-4(g). If a plan administrator fails to comply with the notice requirements, the administrator may face statutory penalties, among other consequences. *See* 29 U.S.C. § 1132(c).

Marrow was employed by Carpenter until March 9, 2022, when she was terminated, but not for gross misconduct. Am. Compl. ¶¶ 24–25. While she was employed, Marrow obtained medical insurance for herself and her dependents through Carpenter's health plan. *Id.* ¶ 24.

About a week after Marrow's termination, Carpenter mailed Marrow a COBRA notice. *Id.* ¶ 27; *see* Notice (Doc. 14-1). The notice informed Marrow that she had "60 days after [her] last day of employment with Carpenter Co. to elect COBRA continuation coverage." Notice at 4. The notice provided that:

> This Election Form must be completed and returned to the Benefits Department at the corporate office. It must be post-marked no later than 60 days from your last day as a Carpenter Co. employee. If you do not submit a completed Election Form within <u>sixty</u> days, you will lose your right to elect COBRA continuation coverage.

*Id.* (emphasis in original)). The notice stated that a "check for the first month of Cobra must be sent with [the] election form," and instructed Marrow to "contact [Carpenter]'s office for [her] initial Cobra coverage premium amount." *Id.*; *see id.* at 3 ("To elect COBRA continuation coverage, follow the instructions on the enclosed Election Form and submit it to us with your first payment."). Elsewhere, though, the notice informed Marrow that, if "[she] elect[ed] continuation coverage," she did not "have to send any payment with the Election Form." *Id.* at 5. Instead, she must make "her first payment for continuation coverage not later than 45 days after the date of [her] election." *Id.* The notice

referred Marrow to a rate sheet for "the amount due for each month for each qualified beneficiary." *Id.*; *see id.* at 2 (rate sheet).

Marrow did not elect continuation coverage and then incurred "significant medical bills" related to her hospitalization for liver problems. *Id.* ¶¶ 31, 33. Both of Marrow's daughters were treated in the emergency room for COVID-19 infections and Marrow's dentist "canceled" Marrow because Marrow "had to request a refund of pre-emptively paid co-pays for upcoming procedures that she then had to cancel due to not having medical coverage." *Id.* ¶ 36. Marrow alleges that her hospitalization and daughters' stints in the emergency room occurred within eighteen months following Marrow's termination. *Id.* ¶¶ 35–36. The amended complaint is not clear as to when Marrow's dentist "cancelled" her, but it is possible that this occurred within eighteen months of Marrow's termination as well. *Id.* ¶ 36.

Marrow alleges that her failure to enroll in continuation coverage—which included medical, dental, and vision coverage—is due to deficiencies in the COBRA notice. *Id.* ¶ 31. Marrow contends that Carpenter's notice failed to comply with 29 C.F.R. § 2590.606-4(b)(4)(v) because the notice provided that the election form "must be postmarked no later than 60 days from your last day as a Carpenter Co. employee," but failed to provide the specific "date by which the election must be made." Am. Compl. ¶ 42. Marrow also alleges that the notice "created a misleading and shortened election period,"

by giving her sixty days from her last day as an employee rather than sixty days from the date of the notice, as is required by 29 U.S.C. § 1165(a)(1)(C). Am. Compl. ¶ 44.

Marrow next points to the inconsistency in the notice concerning whether she needed to send payment with the election form and argues that immediate payment would violate federal law. *Id.* ¶¶ 49–50; *see* 29 U.S.C. § 1162(3) ("In no event may the plan require the payment of any premium before the day which is 45 days after the day on which the qualified beneficiary made the initial election for continuation coverage."). Marrow alleges that the notice failed to provide a description "of the amount, if any, that each qualified beneficiary will be required to pay for continuation coverage," 29 C.F.R. § 2590.606-4(b)(4)(xi), and failed to identify the qualified beneficiaries entitled to elect continuation coverage, *id.* § 2590.606-4(b)(4)(iii). Am. Compl. ¶¶ 53–55. Finally, Marrow alleges that the Notice was not written "in a manner calculated to be understood by the average plan participant." Am. Compl. ¶ 56; *see* 29 C.F.R. § 2590.606-4. Marrow says that these violations "were material and willful." Am. Compl. ¶ 70. All these allegations support a single cause of action. *Id.* ¶¶ 65–71.

Marrow brings her claim as a class action on behalf of all "participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by Defendant during the applicable statute of limitations period as a result of a qualifying

event, as determined by Defendant, who did not elect COBRA." *Id.* ¶ 57. She seeks declaratory, equitable, and monetary relief, among other things. *Id.* at 20.

Carpenter moves to dismiss under Rules 12(b)(1) and 12(b)(6). *See* MTD.

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

Because a federal court lacks subject-matter jurisdiction if a plaintiff lacks standing, Federal Rule of Civil Procedure 12(b)(1) governs when a defendant moves to dismiss because of a lack of standing. *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). To have standing, the plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[A]t the pleading stage, the plaintiff must 'clearly allege facts demonstrating' each element." *Id.* (alteration adopted) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). A plaintiff must demonstrate standing for each form of relief that she seeks. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). As for traceability, although a "defendant's challenged

conduct need not be 'the very last step in the chain of causation' for it to be fairly traceable to the plaintiff's injury," the plaintiff must "demonstrate factual causation between his injuries and the defendant's misconduct." *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023) (emphasis removed) (quoting *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1126 (11th Cir. 2019)). Finally, to satisfy the redressability requirement, the plaintiff must show that a "favorable decision 'would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.' " *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1260 n.7 (11th Cir. 2010) (quoting *Utah v. Evans*, 536 U.S. 452, 464 (2002)).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"In analyzing the sufficiency of the complaint," I may consider "well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. at 544. The complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). But if an exhibit contradicts an allegation in the complaint, then the exhibit controls. *See Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) ("It is the law in this Circuit that 'when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.'" (quoting *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir. 2007))).

## III.  ANALYSIS

Carpenter argues that Marrow fails to allege facts demonstrating that she suffered an injury-in-fact that is traceable to Carpenter's allegedly deficient notice. MTD at 7–11.

Even if Marrow sufficiently alleges that she has standing, Carpenter argues that she fails to state a claim. *Id.* at 11–16.

### A. Marrow Has Standing to Seek Retrospective Relief

#### 1. Injury-in-Fact

Marrow alleges that she suffered an "informational injury" when the COBRA notice failed "to provide her with information to which she was entitled to by statute." Am. Compl. ¶ 21. Carpenter argues that this alleged injury is not a "concrete and particularized." *Spokeo*, 578 U.S. at 341 (emphasis removed). Instead, according to Carpenter, Marrow's alleged informational injury "is nothing more than a bare procedural violation of the COBRA notice requirement that had no actual impact whatsoever," which is not enough to endow Marrow with standing. MTD at 9; *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021) ("An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020))).

But as Marrow points out, she alleges that the "bare procedural violation" had a tangible impact. Specifically, "[t]he deficiencies in Defendant's COBRA notice ultimately caused Plaintiff to not elect COBRA continuation coverage, lose insurance coverage (medical, dental, and vision)," "and incur medical bills as a result." Am. Compl. ¶ 31; *see also id.* ¶¶ 22–23 (alleging Marrow suffered "tangible injury in the form of economic loss,

specifically the loss of health insurance coverage for herself" and the accrual of medical expenses). In other words, Marrow alleges that because of the insufficient notice, she lost insurance and her medical expenses increased.

This alleged pocketbook injury qualifies as an injury-in-fact. *Tyler v. Hennepin County*, 598 U.S. 631, 636 (2023) (concluding that a "classic pocketbook injury" is sufficient to give the plaintiff standing); *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"). My colleagues have concluded the same in similar cases. *See, e.g., Robles v. Lowe's Home Centers, LLC*, No. 8:19-CV-2713-T-02AAS, 2020 WL 1027592, at *2 (M.D. Fla. Mar. 3, 2020) (concluding that "economic injuries in the form of lost health insurance and unpaid medical bills" are "plainly" injuries in fact); *Delaughter v. ESA Mgmt., LLC*, No. 8:16-CV-3302-MSS-AEP, 2018 WL 7349251, at *2 (M.D. Fla. Mar. 20, 2018) (concluding that the plaintiff alleged "concrete and tangible injuries suffered through the temporary loss of coverage," including "medical bills incurred"). Therefore, Carpenter's motion to dismiss on this basis is denied.

2. Traceability

As explained, a plaintiff must "demonstrate factual causation between [her] injuries and the defendant's misconduct." *Walters*, 60 F.4th at 650 (emphasis removed). Carpenter argues that, even if Marrow adequately alleges an injury-in-fact, her injury was not caused

10

by the allegedly deficient notice. MTD at 10–11. This argument also does not provide a basis for dismissal.

Marrow alleges that she "did not enroll in the continuation coverage made available to her, including medical, dental, and vision based, in part, on omission from Defendant's COBRA notice of a specific date by which COBRA election must be made, the amount due, and the demand to include her 'first month of Cobra' with her Election Form." Am. Compl. ¶ 32; *see also id.* ¶ 31. Marrow could not elect to continue coverage "[w]ithout knowing the procedure by which to elect coverage, including the specific date by which she has to elect coverage," and she alleges that the notice was ambiguous on this front, providing only that her election form "must be postmarked no later than 60 days from [her] last day as a Carpenter Co. employee." *Id.* ¶¶ 41–43. Marrow also alleges that the notice failed to provide clear direction as to the amount she was required to pay and the time within which she needed to make a payment to elect continuation coverage. *Id.* ¶¶ 48–55. For example, Marrow alleges that she was "dissuaded and confused" because of the notice's "contradictory statements" about when the first payment was due. *Id.* ¶ 49.

Marrow plausibly pleads that the challenged notice is "fairly traceable" to her stated injuries. *Walters*, 60 F.4th at 650. Taking her allegations as true, there is a "plausible causal chain linking" the challenged notice and Marrow's failure to elect continuation coverage. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019). Of course, discovery

might reveal otherwise but, at this stage, Marrow's allegations suffice. *See Bacs v. Cap. One Fin. Corp.*, No. 8:21-CV-2852-TPB-TGW, 2022 WL 19914434, at *2 (M.D. Fla. July 7, 2022) (concluding that the plaintiffs sufficiently alleged causation when they alleged "that they lost their insurance coverage due to the deficiency in the notice" and "that they incurred significant medical costs due to the loss of insurance").

To resist this conclusion, Carpenter lays the blame at Marrow's feet. Although Marrow claims that she was confused because the notice lacked a specific election date or amount due, Carpenter responds that Marrow never attempted to determine the correct date or amount due, and never took any action to enroll in continuation coverage. MTD at 11. Thus, Carpenter contends, the "alleged deficiencies are not a plausible 'cause'—not even a remote or indirect one—behind [Marrow's] choice to decline coverage." *Id.*

Carpenter's argument is most convincing with respect to the notice's representation as to the time in which Marrow needed to elect continuation coverage. The causal chain would be much more apparent if Marrow alleged that she submitted her election form a few days late because the notice failed to provide a specific due date in violation of 29 C.F.R. § 2590.606-4(b)(4)(v) or listed a shortened election period in violation of 29 U.S.C. § 1165(a)(1)(C). Instead, Marrow does not allege that she submitted an election form at all. In any case, Marrow alleges her injuries are traceable to the notice's alleged violations of 29 C.F.R. § 2590.606-4(b)(4)(v) and 29 U.S.C. § 1165(a)(1)(C) when combined with

the other alleged violations. *See* Resp. (Doc. 24) at 12 ("Defendant ignores the rest of Plaintiff's allegations, including the fact that Defendant demanded the first month's payment for COBRA with the return of the Election Form."); Am. Compl. ¶ 32 (alleging that her injuries were in part based "on omission from Defendant's COBRA notice of a specific date by which COBRA election must be made, the amount due, and the demand to include her 'first month of Cobra' with her Election Form"). As a result, even if Marrow fails to plausibly allege that her stated injuries are traceable to the challenged notice's description of the election period, this does not mean that she fails to plausibly allege that her stated injuries are traceable to the challenged notice as a whole. Carpenter's arguments therefore do not provide a basis for dismissal.

In sum, Marrow adequately alleges that she suffered an injury-in-fact that is traceable to Carpenter's allegedly deficient COBRA notice. Because there is no dispute that Marrow's stated injuries are redressable by a federal court, Marrow has satisfied the "irreducible constitutional minimum" of standing at this stage of the litigation. *Lujan*, 504 U.S. at 560.

### B. Marrow States a Claim for Relief

A plan participant may bring a civil action for statutory damages when a COBRA notice violates statutory and regulatory requirements, including those imposed by 29 C.F.R. § 2590.606-4(b)(4). *See* 29 U.S.C. § 1132(a)(1)(A), (c). A plan participant may

13

also seek injunctive relief. *See id.* § 1132(a)(3). Carpenter argues that Marrow does not plausibly allege that the notice fails to comply with the law. Although I agree in part, Marrow states a claim for relief.

Two of Marrow's allegations about the notice's content conflict with the notice itself, and when "the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

First, Marrow alleges that the notice failed to enumerate "the amount, if any, that each qualified beneficiary will be required to pay for continuation coverage." Am. Compl. ¶¶ 52–53; *see* 29 C.F.R. § 2590.606-4(b)(4)(xi) (requiring that a notice provide a "description of the amount, if any, that each qualified beneficiary will be required to pay for continuation coverage"). But as Marrow recognizes, Am. Compl. ¶ 54, the notice listed the monthly rates for each coverage option and informed the recipient that COBRA continuation coverage costs are provided on the enclosed Rate Sheet," Notice at 2, 5. This corresponds with the model notice. *See* Model Notice (Doc. 14-2) at 5 ("COBRA continuation coverage will cost: [enter amount each qualified beneficiary will be required to pay for each option per month of coverage and any other permitted coverage periods.]").

Although Marrow appears to argue that the notice is insufficient because it fails to include the specific amount that she needed to pay to elect continuation coverage, *see* Am.

Compl. ¶ 52, a COBRA notice is not required by law to include this information. Instead, as the Model Notice states, the burden is on the plan participant to make "sure that the amount of [her] first payment is correct." Model Notice at 10. The Model Notice also provides that the plan participant may contact the plan administrator "to confirm the correct amount of [the participant's] first payment." *Id.* Carpenter's notice includes this same information, *see* Notice at 5, and directs plan participants to "call the Benefits Department for [the participant's] first Cobra payment amount," *id.* at 4. Carpenter's notice is thus sufficient in this regard. *See* 29 C.F.R. § 2590.606–4(g) ("Use of the model notice, appropriately modified and supplemented, will be deemed to satisfy the notice content requirements of paragraph (b)(4) of this section.").

Second, contrary to Marrow's assertion, Am. Compl. ¶ 55, the notice purports to identify the qualified beneficiaries eligible to elect continuation coverage. The notice lists Marrow as the sole qualified beneficiary eligible to elect continuation coverage. Notice at 3. Although Marrow may contest the accuracy of this representation, this is not her allegation. Instead, she merely alleges that the notice "failed to include the identification of the qualified beneficiaries who were recognized by the plan as being entitled to elect continuation coverage." Am. Compl. ¶ 55. The attached notice refutes this allegation, and the attached notice controls. *See Hoefling*, 811 F.3d at 1277.

15

Marrow's other allegations fare better. Marrow alleges that the notice omitted "the specific date by which she has to elect coverage." Am. Compl. ¶ 41; *see* 29 C.F.R. § 2590.606-4(b)(4)(v) (requiring that the notice provide an "explanation of the plan's procedures for electing continuation coverage, including . . . the date by which the election must be made"). Marrow relies on *Valdivieso v. Cushman & Wakefield, Inc.*, No. 8:17-CV-118-T-23JSS, 2017 WL 2191053 (M.D. Fla. May 18, 2017). Resp. at 2–4. There, the plaintiff alleged a violation of 29 C.F.R. § 2590.606-4(b)(4)(viii), which requires among other things "an explanation of the continuation coverage termination date." The notice, though, provided only that "coverage may generally last for up to 18 months." *Valdivieso*, 2017 WL 2191053, at *1. The Court concluded that the plaintiff stated "a plausible claim for [a] violation of 29 C.F.R. § 2590.606–4(b)(4)(viii)" because "the regulation's inclusion of the phrase 'termination date' suggests that the employer must identify the day on which coverage ends." *Valdivieso*, 2017 WL 2191053, at *1.

Carpenter does not dispute Marrow's allegation, but instead argues that Marrow could easily calculate the date because the notice listed Marrow's last day of employment and then informed her that she must return the election form no later than sixty days after that day. MTD at 13. Carpenter provides no authority for the proposition that 29 C.F.R. § 2590.606-4(b)(4)(v) does not require enumeration of a specific date.

Marrow also alleges that the notice violated 29 U.S.C. § 1165(a)(1)(C) because the sixty-day election period ran from the date that the coverage terminated rather than the date of the election notice. Am. Compl. ¶ 44; *see* Notice at 4 ("Under federal law, you have 60 days after your last day of employment with Carpenter Co. to elect COBRA continuation under the Plan."). In response, Carpenter contends that "even if the election period was less than the 60 days required by COBRA, it made no difference as Plaintiff never attempted to elect coverage." MTD at 14. Carpenter relies on *Deering v. O.K. Indus., Inc.*, 9 F. App'x 568 (8th Cir. 2001). There, the COBRA notice informed the plaintiff that she had to return her election form five days too early. *Id.* at 569. But the Eighth Circuit affirmed summary judgment in favor of the employer because the plaintiff's election would have been untimely even if she received the correct date. *Id.* For the reasons already explained, Carpenter's traceability argument does not provide a basis for dismissal in the light of the amended complaint's other allegations. *See supra* at 12–13.

Marrow also alleges that the notice was insufficient because it contained contradictory statements regarding the due date of the first payment (one of which violated federal law by requiring payment with the election form). Am. Compl. ¶¶ 47–51; *see* 29 U.S.C. § 1162(3) ("In no event may the plan require the payment of any premium before the day which is 45 days after the day on which the qualified beneficiary made the initial

election for continuation coverage."); 29 C.F.R. § 2590.606-4(b)(4)(xii) (requiring that a notice provide a "description of the due dates for payments").

Carpenter responds that the notice "sufficiently explains the procedures for determining the timing . . . of premium payments." MTD at 15. With respect to the due date for the first payment, Carpenter does not contest that the notice informs participants that a check "must be sent with [their] election form." Notice at 3. Carpenter, though, argues that dismissal is still appropriate because the notice later provides that the participant does "not have to send any payment with the Election Form." Notice at 5; MTD at 15. This part of the notice provides that a participant "must make [her] first payment for continuation coverage not later than 45 days after the date of [her] election." Notice at 5. Despite the conflict, Carpenter contends that Marrow cannot state a claim because she failed to contact Carpenter's Benefits Department to clear up her confusion. MTD at 15.

Carpenter's argument goes to whether Marrow suffered harm from the confusion or failed to take common sense steps, but it does not undermine the legal requirements. As explained, under the relevant statutory provisions, a program beneficiary may sue a plan administrator who fails to meet the notice requirements of 29 U.S.C. § 1166(a)(4), which requires notice in "accordance with regulations prescribed by the Secretary [of Labor]." *See* 29 U.S.C. § 1132(a), (c). Carpenter does not argue that its notice's description of

conflicting due dates complied with 29 C.F.R. § 2590.606-4(b)(4)(xii), and thus it has not convincingly argued that Marrow fails to state a claim.

Marrow next alleges that the notice was not "written in a manner calculated to be understood by the average plan participant," 29 C.F.R. § 2590.606-4(b)(4), because it, among other things, "failed to fully explain the procedures for electing coverage by omitting information regarding the date by which the election of coverage must be made" and also omitted information on "when or if she was required to send payment for the first month with her Election Form," Am. Compl. ¶¶ 3, 56. Courts have interpreted 29 C.F.R. § 2590.606-4(b)(4) to set forth "an objective standard rather than requiring an inquiry into the subjective perception of the individual [plan] participants." *Vazquez v. Marriott Int'l, Inc.*, No. 817CV00116MSSMAP, 2018 WL 3860217, at *4 (M.D. Fla. Aug. 7, 2018) (alteration in original) (quoting *Wilson v. Sw. Bell Tel. Co.*, 55 F.3d 399, 407 (8th Cir. 1995)). Carpenter argues that, if this allegation is "simply cumulative of the argument made with respect to the other purported violation[s]," then it fails because of Carpenter's other arguments. MTD at 16. If the allegation is based on different language in the notice, then the allegation fails, Carpenter says, because Marrow "does not identify with any specificity any problematic language." *Id.*

From the amended complaint and Marrow's response to Carpenter's motion, *see* Am. Compl. ¶¶ 3, 56; Resp. at 14, this allegation is cumulative to the others that she

19

makes. It is perhaps a close call as to whether Marrow has plausibly alleged that the average plan participant would not understand the notice because of its description of the election procedures and the conflicting statements as to when a program participant needed to pay to elect continuation coverage. This question, though, is better suited for summary judgment, where the parties can substantiate their positions with evidence as to the understandability of the notice. *See Robles*, 2020 WL 1027592, at *3 ("Defendant's argument is a denial of Plaintiffs' allegation that the notice was deficient enough to prevent the Plaintiffs from making an informed decision about COBRA election—in short, a challenge addressing the merits of Plaintiffs' case. Whether the COBRA notice here was deficient is a question that is premature for disposition.").

Carpenter offers a few global arguments, none of which provide a reason for dismissal. First, Carpenter cites *Scott v. Suncoast Beverage Sales, Ltd.*, for the proposition that a notice "must be sufficient to permit the discharged employee to make an informed decision whether to elect coverage." 295 F.3d 1223, 1230 (11th Cir. 2002). Carpenter's use of this quote appears to suggest that violations of specific provisions of 29 C.F.R. § 2590.606–4(b)(4) will not provide a basis for liability so long as the notice remains "sufficient to permit the discharged employee to make an informed decision whether to elect coverage." *Scott*, 295 F.3d at 1230. But *Scott* was decided before the Secretary of the Labor promulgated 29 C.F.R. § 2590.606–4, *see Valdivieso*, 2017 WL 2191053, at *2, and

the Eleventh Circuit has not since held that a plan administrator is exempt from liability even if it fails to comply with 29 C.F.R. § 2590.606–4's requirements, *cf. DeBene v. BayCare Health Sys., Inc.*, 688 F. App'x 831, 839 (11th Cir. 2017) ("We have not directly addressed what an employer must do to satisfy its notification obligations under COBRA.").

Also, although Carpenter argues that a "good faith attempt to comply with a reasonable interpretation of the statute is sufficient to satisfy COBRA requirements," MTD at 12 (quoting *Pierce v. Visteon Corp.*, 843 F. Supp. 2d 936, 940 (S.D. Ind. 2011)), the good-faith-attempt standard arose before the Secretary of Labor promulgated 29 C.F.R. § 2590.606–4. "Lacking regulatory guidance, employers 'operate[d] in good[-]faith compliance with a reasonable interpretation of what adequate notice entails.' " *Valdivieso*, 2017 WL 2191053, at *2 (alterations original) (quoting *Degruise v. Sprint Corp.*, 279 F.3d 333, 336 (5th Cir. 2002)). After the promulgation of 29 C.F.R. § 2590.606–4, though, which "includes no 'good-faith' defense, . . . a 'good-faith' attempt to comply with the law no longer excuses an employer's purported breach of the notice requirement." *Id.* And even if good faith remained a permissible exception, the existence of good faith is a factual question unfit for resolution on a motion to dismiss. *See Carroll Kenworth Truck Sales, Inc. v. Kenworth Truck Co.*, 781 F.2d 1520, 1526 (11th Cir. 1986).

Carpenter also cites *Franks v. Central Garden & Pet Co.*, a case in which the court granted summary judgment in favor of the plan administrator. No. 3:06CV68 CDL, 2007 WL 2320624, at *6 (M.D. Ga. Aug. 10, 2007). In *Franks*, the notice omitted "the date on which coverage under the plan will terminate" and "the date by which the election must be made," 29 C.F.R. § 2590.606-4(b)(4)(iii), (v), but the plaintiff still signed up for continuation coverage, 2007 WL 2320624, at *6. The court concluded that despite the technical deficiencies, the plaintiff was still able to make "a meaningful choice to continue her coverage, since she did in fact continue her insurance coverage." *Id.* Even if the technical deficiencies were considered a violation of COBRA, the court declined to impose penalties. *Id.* at *6 n.9.

*Franks* is distinguishable. The election of coverage in *Franks* stood as a strong piece of evidence that the notice at issue allowed the plaintiff to make "a meaningful choice to continue her coverage," 2007 WL 2320624, at *6, but here Marrow does not allege that she elected continuation coverage. Although Carpenter argues that any deficiencies "did not interfere with Plaintiff's ability to make a meaningful choice about continuing coverage under COBRA," MTD at 10–11, Marrow alleges that the notice's deficiencies interfered with her ability to elect continuation coverage, *see, e.g.*, Am. Compl. ¶¶ 31–32. At this stage, Marrow's allegations are accepted as true. *Pielage*, 516 F.3d at 1284.

22

## IV.    CONCLUSION

Marrow sufficiently alleges that she has standing to pursue her claim and sufficiently alleges that Carpenter's COBRA notice fails to comply with the law.

Accordingly, the following is **ORDERED**:

1.    Carpenter's Motion to Dismiss (Doc. 15) is **DENIED**.

2.    No later than **February 25, 2025**, the parties must file an amended case management report.

**ORDERED** in Tampa, Florida, February 4, 2025.

Kathryn Kimball Mizelle
United States District Judge