UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAROYA MARROW, individually and
on behalf of all others similarly situated,

    Plaintiff,

v.                                                       Case No. 8:23-cv-02959-KKM-LSG

E.R. CARPENTER COMPANY, INC.,
d/b/a CARPENTER CO.,

    Defendant.
_____

## ORDER

Saroya Marrow alleges that E.R. Carpenter Co., her former employer, failed to provide a sufficient notice of continuing healthcare coverage, in violation of the Employee Retirement Income Security Act (ERISA), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA). Am. Compl. (Doc. 14). Marrow moves to certify this case as a class action. Mot. for Class Certification (MCC) (Doc. 48). For the below reasons, I deny Marrow's motion.

I.  BACKGROUND

Marrow was employed by Carpenter until March 9, 2022, when she was terminated for reasons other than gross misconduct. Am. Compl. ¶¶ 24–25. While she was employed, Marrow obtained medical insurance for herself under Carpenter's health plan. *Id.* ¶ 24; (Doc. 53-3) at 2.[1] Because Carpenter sponsors and administers a health plan for its more than twenty employees, Am. Compl ¶ 7, it must, under COBRA, provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event," which includes termination for reasons other than gross misconduct, with the choice "to elect, within the election period, continuation coverage under the plan," 29 U.S.C. §§ 1161(a), 1163(2). This notice must be issued in "accordance with regulations prescribed by the Secretary [of Labor]." *Id.* § 1166(a); *see* 29 C.F.R. § 2590.606-4.

Carpenter mailed Marrow a COBRA notice about a week after her termination, Am. Compl. ¶ 27; *see* Notice (Doc. 14-1), but Marrow alleges that Carpenter failed, for more than one reason, to comply with the governing

---

[1] Marrow alleges that she obtained medical insurance for "herself and dependents." Am. Compl. ¶ 24. She states the same in her declaration. *See* Marrow Decl. (Doc. 48-5) ¶ 3. But in her application form, Marrow elected coverage only for herself. *See* (Doc. 53-3) at 2.

regulations, *see, e.g.*, Am. Compl. ¶¶ 19, 38–56. As a result of Carpenter's non-compliance, Marrow alleges that she did not elect COBRA coverage and suffered both economic and informational injuries. *Id.* ¶¶ 20–23, 31–33.

So Marrow sued. Am. Compl. After I denied a motion to dismiss premised on lack of standing and failure to state a claim for relief, MTD Order (Doc. 30), Marrow now moves to certify this case as a class action, MCC. Carpenter responds in opposition. Resp. (Doc. 52).

## II. LEGAL STANDARD

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.' " *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)). A district court must also find that the named plaintiffs have standing. *See Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 888 (11th Cir. 2023) ("We start from the basic principle that at the class certification stage only the named plaintiffs need have standing.").

If a plaintiff satisfies these prerequisites, she must then "must affirmatively demonstrate [her] compliance with" Federal Rule of Civil Procedure 23. *Wal-Mart*

3

*Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). First, she must satisfy Rule 23(a)'s requirements: "numerosity, commonality, typicality, and adequate representation." *Id.* at 349. "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Id.* at 345.

## III. ANALYSIS

Standing issues prevent certification of a class action in this case.

### A. Marrow May Lack Standing

To satisfy Article III, only the named plaintiff needs standing. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1264 (11th Cir. 2019). To have standing, a "plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 296 (2022). I previously concluded, based on the allegations in her amended complaint, that Marrow adequately alleges all three elements. *See* MTD Order at 9–13; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." (alteration adopted) (quotation omitted)).

4

At the class certification stage, though, " 'it may be necessary for the court to probe behind the pleadings' to assess standing." *Green-Cooper*, 73 F.4th at 891 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)); *cf. Dukes*, 564 U.S. at 350 (explaining that a "party seeking class certification" must "prove" her compliance with Rule 23). For example, when "the facts developed in discovery firmly contradict the allegation[s] in the complaint," the district court cannot "rely on the complaint's factual allegation[s]." *Green-Cooper*, 73 F.4th at 891. Here, some of the facts developed in discovery contradict Marrow's allegations.

In her amended complaint, Marrow alleges both informational and economic injuries. Am. Compl. ¶¶ 21–23, 31, 32–36. Precedent makes clear that informational injury alone is insufficient to convey standing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021) ("An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.' " (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)); *Klein v. Receivable Mgmt. Grp., Inc.*, 595 F. Supp. 3d 1183, 1192 (M.D. Fla. 2022) ("To establish a concrete harm under an informational injury theory, a party asserting federal jurisdiction must show both that the plaintiff's injury was 'real' (that there were 'downstream consequences')

5

and that Congress made it 'legally cognizable' by seeking to ameliorate the plaintiff's harm through a statute." (quotation omitted)).

Marrow, though, also alleges some downstream consequences, namely loss of insurance and resulting medical bills. *See* Am. Compl. ¶¶ 22–23, 31–36. These allegations sufficed at the pleadings stage, *see* MTD Order at 10 ("This alleged pocketbook injury qualifies as an injury-in-fact."), but evidence revealed during discovery has called them into question.

First, Marrow testified that she was on Medicaid after Carpenter terminated her and until she next received employment. Marrow Dep. (Doc. 53-1) at 11:11–17. Second, although Marrow alleges that at least one of her daughters lost health insurance as a result of Carpenter's notice, Am. Compl. ¶ 32, and has since stated the same in a declaration, Marrow Decl. ¶¶ 11–12, other evidence indicates that Marrow never "enroll[ed] her daughters in Carpenter's health coverage in the first place," Resp. at 5 n.4; *see* (Doc. 53-3) at 2; (Doc. 53-4) at 2. Third, in her amended complaint, Marrow alleges that her dentist "cancelled [Marrow] because she had to request a refund of pre-emptively paid co-pays for upcoming procedures that she then had to cancel due to not having medical coverage." Am. Compl. ¶ 36. But

6

Marrow's dental records do not demonstrate that she cancelled any procedures after Carpenter terminated her. *See* (Doc. 53-2) at 5–6.

Finally, beyond a conclusory statement in her declaration, Marrow has failed to produce any tangible evidence of increased medical expenses. *See* Marrow Decl. ¶ 11 ("As a result [of not electing COBRA], we lost our health insurance coverage. I incurred out-of-pocket medical expenses due to this loss."). In her amended complaint, Marrow alleges that she "incurred significant medicals bills . . . related to her hospitalization for liver problems," Am. Compl. ¶ 33, but Carpenter represents that Marrow has not produced proof of these bills, *see* Resp. at 4. The same appears to be true concerning other alleged expenses too, such as the cost of her "hospitalization during the eighteen months following her termination . . . and treatment for her ongoing chronic condition." Am. Compl. ¶ 35. Marrow's deposition testimony on this subject is not all that clear, *see* Marrow Dep. at 30:14–31:25, and there is no documentary evidence of these expenses. Marrow also refers to other hospital visits during her deposition, *see id.* at 32:1–36:8, but the record does not include any evidence concerning these visits either.

Even assuming that Marrow was injured in fact, questions remain about traceability. Marrow claims four problems with the notice. Taken on its own,

Marrow does not demonstrate that any injury-in-fact is traceable to the first issue, which concerns the notice's omission of a specific due date for the decision to elect continuation coverage and the notice's creation of a shortened election period. *See* Am. Compl. ¶¶ 42–44.[2] Marrow fails to explain, in the light of the fact that she never attempted to elect continuation coverage, how the notice's errors in this regard caused her stated injuries. *See* MTD Order at 12; *cf. Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023) ("[W]e have held traceability to be lacking if the plaintiff 'would have been injured in precisely the same way' without the defendant's alleged misconduct." (quoting *Cordoba*, 942 F.3d at 1272)).

In the order denying Carpenter's motion to dismiss, I concluded that Marrow plausibly alleges traceability because she alleges that her injuries are traceable to the notice's misarticulation of the due dates combined with the rest of the alleged issues with the notice. *See* MTD Order at 12–13. Two of those issues, though—the notice's description of the cost of continuation coverage and the notice's description of the qualified beneficiaries—are not issues at all. Am. Compl. ¶¶ 52–55; *see* MTD Order at 14–15 (concluding that these allegations "conflict with the notice itself").

---

[2] Marrow also alleges that, for the same reasons, the notice was not "written in a manner calculated to be understood by the average plan participant." 29 C.F.R. § 2590.606-4(b)(4); *see* Am. Compl. ¶ 56.

Also, beyond conclusory statements of confusion, Marrow does not explain why these provisions prevented her from electing COBRA coverage. Marrow Dep. at 19:2–21:9.

Marrow's final issue with the notice is that it provides conflicting information as to when, if she wanted to elect continuation coverage, her first payment would be due. *See* Am. Compl. ¶¶ 49–51. The notice first informs its reader that a check must be sent with the election form. Notice at 4 ("A check for the first month of Cobra must be sent with your election form."). But the notice later provides the opposite. *Id.* at 5 ("If you elect continuation coverage, you do not have to send any payment with the Election Form."). Marrow testified, though, that she had the necessary funds to send payment with her election form. Marrow Dep. at 25:24–26:24. This testimony casts doubt on Marrow's assertion that the notice's contradictory statements caused her not to elect continuation coverage.

Further casting doubt on Marrow's traceability argument is the fact that she consulted with counsel about the COBRA notice before Carpenter sent it. *See id.* at 16:21–24 (Marrow testifying that she spoke with her lawyers on the day she was fired). This conversation suggests that Marrow may have already been aware of her COBRA rights before she received the notice.

9

In all, some of the facts developed in discovery suggest that Marrow lacks standing. Although not necessary to decide this motion in the light of Marrow's failure to prove predominance, Marrow must prove her standing before this action may proceed. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (explaining that a court "should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises"); *Rosenkrantz v. Markopoulos*, 254 F. Supp. 2d 1250, 1252 (M.D. Fla. 2003) ("When standing is challenged on a factual basis, the plaintiff must demonstrate that standing exists by a preponderance of the evidence."); *see also Lujan*, 504 U.S. at 561.

### B. Individualized Standing Issues Precludes Certification

Marrow seeks certification of a class under Federal Rule of Civil Procedure 23(b)(3). *See* MCC at 2, 20. Marrow must therefore show, among other things, that "the questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). This inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

Determining predominance requires "a pragmatic assessment of the entire action and all the issues involved." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350,

10

1357 (11th Cir. 2009) (quotation omitted). "Common issues of fact and law predominate if they 'have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.' " *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (alteration adopted) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)). Common issues do "not predominate over individual questions if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Id.* (alteration adopted) (quoting *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir. 1996)).

"Every class member must have Article III standing in order to recover individual damages." *TransUnion*, 594 U.S. at 431; *accord Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not."). This does not mean, under current precedent, "that a court is required to ensure that the class definition does not include any individuals who do not have standing before certifying a class." *Cordoba*, 942 F.3d at 1276 (emphasis omitted). *But see Lab'y Corp. of Am. Holdings v. Davis*, 605 U.S. 327, 332 (2025) (Kavanaugh, J., dissenting from dismissal of certiorari as improvidently granted)

11

("Federal courts may not certify a damages class under Rule 23 when, as here, the proposed class includes both injured and uninjured class members."). But it does mean that, at least in some cases, a district court must consider individualized standing issues when considering whether Rule 23(b)(3)'s predominance factor is satisfied. *See Cordoba*, 942 F.3d at 1277 ("[I]n this case the district court must consider under Rule 23(b)(3) before certification whether the individualized issue of standing will predominate over the common issues in the case, when it appears that a large portion of the class does not have standing, . . . and making that determination for these members of the class will require individualized inquiries."); *Williams*, 568 F.3d at 1358 (explaining that a district court must consider, in conducting a predominance inquiry, "how the class will prove causation and injury and whether those elements will be subject to class-wide proof").

Marrow proposes a nationwide class and, in the alternative, a Florida class. The two classes are defined as:

- All participants and beneficiaries in the Defendant's Health Plan who: (1) were sent a COBRA notice by Defendant, in the form attached to this Motion as Exhibit C, during the applicable four-year statute of limitations period as a result of a qualifying event, as determined by Defendant, and (2) did not elect continuation coverage.

12

- All Florida participants and beneficiaries in the Defendant's Health Plan who: (1) were sent a COBRA notice by Defendant, in the form attached to this Motion as Exhibit C, during the applicable four-year statute of limitations period as a result of a qualifying event, as determined by Defendant, and (2) did not elect continuation coverage.

MCC at 3. There are "thousands of nationwide class members and hundreds of Florida class members." *Id.* at 12. The individualized standing issues within either proposed class prevents certification under Rule 23(b)(3).

For each class member, I will have to determine whether they suffered an injury-in-fact as the result of not electing continuation coverage. This will require review of insurance records and medical expenses for each and every class member. *See TransUnion*, 594 U.S. at 442 ("An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" (quoting *Trichell*, 964 F.3d at 1004)). It is quite possible that, for many class members, the decision not to elect continuation coverage did not result in any cognizable injury. *See* Resp. at 18 (hypothesizing that some class members "obtained health insurance through their spouse, new employment, or the marketplace," or did not "need new coverage").

I will also have to determine, assuming some class members suffered an injury-in-fact, whether the alleged deficiencies in Carpenter's notice caused the injuries. *See Walters*, 60 F.4th at 650 ("A plaintiff must at least demonstrate *factual* causation

13

between his injuries and the defendant's misconduct." (emphasis in the original)). This will require inquiry into the reason each class member declined to elect continuation coverage. *See* Resp. at 19 ("Each class member would have to rely on individualized proof to establish a causal nexus between the few allegedly deficient sentences in Carpenter's notice and any injury the member allegedly suffered."). Some class members, may, for example, have not elected continuation coverage because it was too expensive, not because of any technical deficiency with the notice. *See id.*

Answering these questions would require each plaintiff to "provide some individualized proof that they have standing." *Cordoba*, 942 F.3d at 1275. In other words, before awarding relief, I would have to conduct hundreds, if not thousands, of individualized mini trials on the first two elements of the standing test. *Id.* at 1274 ("[A]t some point before it can award *any* relief, the district court will have to determine whether each member of the class has standing. That is an individualized issue.").[3] This means that, contrary to Marrow's contention, issues common to the

---

[3] This is especially true given the lack of evidence suggesting that any class member has standing. *See DiPierro v. Florida Health Scis. Ctr., Inc.*, 737 F. Supp. 3d 1314, 1332 (M.D. Fla. 2024) ("[I]t seems quite likely that few members of the proposed class could establish standing when all was said and done.").

14

class—mainly whether the COBRA notice complied with the governing law—do not predominate over individual questions. Even after "adjudication of the classwide issues," each plaintiff would still have to "introduce a great deal of individualized proof [and] argue a number of individualized legal points." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009) (quoting *Klay*, 382 F.3d at 1255). Accordingly, predominance is lacking. It follows that Rule 23(b)(3)'s other factor, superiority, is also absent. *See Klay*, 382 F.3d at 1269 ("[W]hen there are no predominant common issues of law or fact, class treatment would be either singularly inefficient or unjust." (omission adopted) (quotation omitted)).[4]

## IV.   CONCLUSION

Marrow fails to convince, on the current record, that she has Article III standing. She also fails to demonstrate that issues common to either proposed class predominate over individualized standing issues.

Accordingly, the following is **ORDERED**:

1. No later than **September 2, 2025**, Marrow must submit evidence proving that she has standing to sue.

---

[4] As a result of this conclusion, I do not need to consider Carpenter's other arguments in opposition to Marrow's motion.

2. Marrow's Motion for Class Certification (Doc. 48) is **DENIED**.

**ORDERED** in Tampa, Florida, August 18, 2025.

Kathryn Kimball Mizelle
United States District Judge